IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:10-CR-00025-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| WILLIAM JAMES MORRISON III, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant's *pro se* "Emergency Motion to Reconsider Compassionate Release Pursuant to 18 U.S.C. Section 3582(c)(1)(A), the First Step Act of 2018 Due to Recent Pandemic Caused by Coronavirus." (Doc. No. 102). For the reasons explained below, the Court will deny Defendant's motion without prejudice to file a new motion after exhaustion of his administrative remedies.

I.  BACKGROUND

In 2011, a jury found Defendant guilty of one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). At sentencing, Defendant was designated an armed career criminal and subject to a 15-year mandatory minimum sentence under 18 U.S.C. § 924(e). Based on a total offense level of 33, and a criminal history category of VI, Defendant's guidelines range was determined to be 235-293 months of imprisonment. The Court imposed a sentence at the bottom of the guidelines range—235 months. The Fourth Circuit affirmed his conviction and sentence on appeal.

Defendant is a 60-year-old male confined at FCI Edgefield in Edgefield, South Carolina. His projected release date is April 30, 2036. This is Defendant's second motion for compassionate

1

release. In his first motion, Defendant claimed that he was at a heightened risk of death from COVID-19 because he suffers from type 2 diabetes, prostate cancer, hepatitis-C, high blood pressure, and a history of heart disease, but failed to attach any medical records in support of his self-asserted claims. (Doc. No. 100). The Court denied Defendant's first motion for compassionate release without prejudice for failure to exhaust his administrative remedies as required under Section 3582(c)(1)(A). (Doc. No. 101). In Defendant's second motion for compassionate release, Defendant requests that the Court excuse the exhaustion requirement and attaches over 100 pages in medical records from the Bureau of Prisons (BOP).

## II. COMPASSIONATE RELEASE

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Courts are split over whether the exhaustion requirement is jurisdictional or is a "case processing" rule that can be waived. *Compare United States v. Brown*, No. CR 12-20066-37-KHV, 2020 WL 1935053, at *1 (D. Kan. Apr. 22, 2020) ("The requirement to exhaust administrative remedies or wait 30 days after the warden receives a request is jurisdictional.") *with United States v. Alam*, -- F.3d --, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (holding that the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is non-jurisdictional). The majority view is that the exhaustion requirement is a case processing rule. *See, e.g.*, *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

If the rule is not jurisdictional, then it can be waived, forfeited, or abandoned, and is otherwise subject to exceptions. *See United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3

(S.D.N.Y. Apr. 3, 2020); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020). These exceptions include "where it would be futile, either because the agency decisionmakers are biased or because the agency has already determined the issue, . . . where the administrative process would be incapable of granting adequate relief, . . . [or] where pursuing agency review would subject plaintiffs to undue prejudice." *Zukerman*, 2020 WL 1659880, at *3 (citing *Washington v. Barr*, 925 F.3d 109, 118-19 (2d Cir. 2019)). It is Defendant's burden to show that he has exhausted his remedies or that exhaustion would be futile. *See, e.g.*, *United States v. Bolino*, No. 06-cr-0806(BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (requiring defendant to prove that the exhaustion requirement has been met).

Defendant "concedes that he has not completly [sic] exhausted his Administrative remedies as required under Section 3582(c)(1)(A)." (Doc. No. 102, at 2). "However," Defendant argues, "due to the Emergency nature of this Filing, time may not permit full exhaustion before fatalities ensue. As such, [Defendant] relies on relevant case law which allows for waiver of exhaustion." (Doc. No. 102, at 2-3). According to the BOP's website, FCI Edgefield has only one confirmed COVID-19 case amongst the inmates and eleven confirmed cases amongst the staff. The BOP can isolate staff members who test positive for COVID-19 more easily than it can inmates who test positive by mandating that BOP employees who test positive or exhibit symptoms of the virus not come to work. *See* COVID-19 Staff Screening Tool, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 20, 2020) (describing the BOP's staff screening tool, where employees' temperature is taken and if the temperature is high, the employee is immediately placed on leave for three days). Given that FCI Edgefield has over 1,500 total inmates and only one has tested positive, the Court finds that Defendant has not met his burden of showing that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) should be excused. With so

3

few cases amongst the inmate population at FCI Edgefield, requiring Defendant to exhaust his administrative remedies within the BOP before petitioning this Court would not result in any "catastrophic health consequences" or unduly prejudice Defendant. *See United States v. Fraction*, No. 3:14-CR-305, 2020 WL 3432670, at *7 (M.D. Pa. June 23, 2020) (finding the defendant did "not demonstrate any 'catastrophic health consequences' to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP").

Inmates are in federal custody for a reason, and each inmate's sentencing judge considered many factors, including danger to the community and medical conditions when initially imposing these sentences. The law considers the imposition of a sentence of imprisonment as a final judgment on the matter and "closely guards the finality of criminal sentences against judicial 'change of heart.'" 18 U.S.C. § 3582(b); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010). Moreover, when Congress fashioned the compassionate release statute—an exception to the general rule that terms of imprisonment may not be modified once imposed—it gave the BOP an important statutory role. Allowing the BOP to first address Defendant's compassionate release request makes sense, as the BOP stands in the best position to assess all of the factors which must be considered in granting a motion for compassionate release, including the number of COVID-19 cases within the particular facility; the defendant's medical conditions and his or her resulting susceptibility to COVID-19 complications; the ability of the facility to treat the defendant's medical conditions; the defendant's conduct during the period of incarceration; and the defendant's proposed release plans, among other factors. *See United States v. Wroten*, No. 1:06-cr-00250-MR-WCM-21, 2020 WL 3960825 n. 4 (July 13, 2020). Given the BOP's shared desire for a safe and healthy prison environment, the Court concludes that strict compliance with § 3582(c)(1)(A)'s

4

exhaustion requirement takes on added—and critical—importance. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Court does not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Defendant. However, the BOP is taking proactive measures to prevent the spread of COVID-19 among inmates at Edgefield and other facilities. In addition, the BOP is reviewing all inmates who have COVID-19 risk factors, as described by the CDC, to determine which inmates are suitable for home confinement. Since March 26, 2020, the BOP has placed 6,997 inmates on home confinement. Further, if an inmate does not meet the BOP's internal criteria for home confinement, the BOP may petition a court for compassionate release on an inmate's behalf pursuant to 18 U.S.C. § 3582(c)(1)(A).

For these reasons, Defendant's motion will be denied without prejudice to file a new motion after exhaustion of Defendant's administrative remedies within the BOP.

### III.  ORDER

**IT IS THEREFORE ORDERED** that Defendant's *se* "Emergency Motion to Reconsider Compassionate Release Pursuant to 18 U.S.C. Section 3582(c)(1)(A), the First Step Act of 2018 Due to Recent Pandemic Caused by Coronavirus," (Doc. No. 102), is **DENIED** without prejudice after exhaustion of his administrative remedies.

**SO ORDERED.**

Signed: July 21, 2020

Kenneth D. Bell
United States District Judge